NATIONAL SURETY CORPORATION *vs.* ALBERT A. LIST.

Suffolk.    January 8, 1941. -- April 3, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Bills and Notes,* What constitutes negotiable instrument, Holder in due course, Municipal bond. *Municipal Corporations,* Bonds.

A municipal bond negotiable in form and payable to bearer was subject to the negotiable instruments law, G. L. (Ter. Ed.) c. 107.

One who took a stolen negotiable bearer bond in pledge as collateral security for a preëxisting debt was a holder for value under G. L. (Ter. Ed.) c. 107, § 48, and on warranted findings that he took it in

---

good faith and without knowledge that it had been stolen or knowledge of facts which put him on inquiry, he was a holder in due course not accountable respecting the bond to an assignee of the person from whom it had been stolen.

BILL IN EQUITY, filed in the Superior Court on June 28, 1939.

The suit was heard by *F. T. Hammond*, J.

*K. C. Tiffin*, for the plaintiff.

*I. S. Levin*, (*E. A. Macy* with him,) for the defendant.

Cox, J.   On February 10, 1936, six State of Louisiana, Jefferson Davis Parish bonds, payable to bearer, were stolen from their owner. The plaintiff paid the owner for its loss and took an assignment of its interest and title, by virtue of which this suit was brought to require the defendant to deliver the bonds to it and to determine the plaintiff's damage resulting from the defendant's failure to deliver them upon demand. The suit was tried by a judge of the Superior Court, by whose order the testimony was reported. He also filed a statement of findings and order for decree. A final decree dismissing the bill with costs was entered, from which the plaintiff appealed. In the circumstances, it is not for this court to disturb the findings of the trial judge unless they are plainly wrong. *White Tower Management Corp.* v. *Taglino*, 302 Mass. 453, 454, and cases cited.

No question is raised but that the stolen bonds, payable to bearer, were negotiable. The judge found that, beginning in August, 1936, the defendant lent money to one Lydon and to a corporation, hereinafter referred to as the company, of which Lydon was the president. There was evidence that Lydon owned all of the stock of that company. The judge also found that the company was registered by the department of public utilities and was engaged in the business of stockbroker in Boston. On February 27, 1937, the total amount due the defendant on the various loans was $5,430, for which amount the company gave the defendant a note dated February 23, 1937, secured by various bonds and shares of stock. This note bore the guaranty of Lydon as an individual. Thereafter, the defendant made further advances and received some pay-

ments, so that the total amount due him on May 22, 1937, was $8,650. On May 21, 1937, the registration of the company, at its request, was cancelled by the department, and, on May 22, Lydon informed the defendant that he could not meet the requirements necessary to enable the company to continue in business and that he was doing business as an individual and not as a corporation. He asked the defendant if he would accept his individual note for the sum then due. The latter consented, and Lydon gave him a demand note for the amount due signed by him individually and secured by a pledge of various shares of stocks and bonds, among which were the six bonds in question. When this note was given, the note of the company dated February 23, and another note dated May 4, were not cancelled or discharged, but were retained by the defendant. Three of the bonds in question had been deposited with the defendant and expressly listed as collateral security for the note of May 4, which was indorsed by Lydon. The other three bonds were not listed as collateral in any of the notes put in evidence prior to the note dated May 22, but the judge found that at some time between February 23 and May 6 they replaced other collateral.

It was not until September 3, 1937, that the defendant learned that some of the securities that Lydon had pledged had been stolen. Lydon continued to make payments to the defendant upon his indebtedness until November 19, 1938. On January 25, 1939, the plaintiff made a demand upon the defendant for the bonds in question, and on February 27, 1939, the latter sold them to his wife under the power contained in the note of May 22, 1937. The following day they were sold to brokers in Boston, who paid for them by check payable to the defendant's wife. Proceeds of the check were applied upon Lydon's note of May 22, 1937, the amount of which exceeded the amount of the check.

The judge found categorically that, at the time the defendant received the six bonds, he had no knowledge that they were stolen or any knowledge of any facts that put him on inquiry, and that he took them as pledgee in good

faith and for value, was a holder in due course, had a right to sell them under the collateral note agreements, and was not accountable in this suit to the plaintiff for the proceeds of the bonds. We are of opinion that these findings were warranted by the evidence.

The plaintiff contends that the bonds were taken as security for a preëxisting debt, and that thereby the defendant was not a holder for value, relying upon *Goodwin* v. *Massachusetts Loan & Trust Co.* 152 Mass. 189, 199. The plaintiff, apparently, has overlooked the point that so much of the opinion in that case upon which it relies deals with the pledging of chattels, as distinguished from negotiable instruments. It is settled that one who receives a negotiable instrument as collateral or additional collateral security for a preëxisting debt is a holder for value, G. L. (Ter. Ed.) c. 107, § 48; *Reynolds* v. *Park Trust Co.* 245 Mass. 440, 444, 445; *Freeman* v. *Davenport Peters Co.* 272 Mass. 321, 324, 325, and this court has recently decided that the negotiable instruments law applies to municipal bonds and coupons negotiable in form. *Fidelity & Deposit Co. of Maryland* v. *Taunton,* 303 Mass. 176. *Cohn* v. *Taunton,* 303 Mass. 182. See *Massachusetts National Bank* v. *Snow,* 187 Mass. 159, 163.

The plaintiff further contends that the defendant was put upon inquiry on May 22, 1937, when, as it contends, he took Lydon's individual note that listed as collateral the six bonds in question, and that on that date when, as it contends, he accepted them as collateral for the individual obligation of Lydon, he did not receive them in good faith. But there was evidence, and the judge found, that the bonds were already held by the defendant as collateral for the notes of the company which were indorsed or guaranteed by Lydon individually. The company notes were not cancelled nor discharged, but were retained by the defendant, and there was evidence that on the day the individual note was taken, Lydon asked the defendant if he had any objection to taking a new note that he could keep for whatever it was worth; that he, Lydon, was indorser on the company notes personally, and that after he paid the

loan, the defendant could release to Lydon "my corporation notes." There was also evidence that, before taking the note, the defendant conferred with his attorney who advised him that he could take it as additional security, and that Lydon was on the company notes anyway. The finding of the judge, however, disposes of this contention, and we are of opinion that it was warranted. See G. L. (Ter. Ed.) c. 107, § 79.

There is nothing in the evidence that warrants even an inference that the defendant knew, prior to August 30, 1937, that any of the securities pledged with him had been stolen, on which date he endeavored to borrow from a bank on the collateral security of some of the shares of stock that had been deposited by Lydon as collateral. At that time, when these shares were presented for transfer, it was discovered that they, and another certificate of stock that had been pledged, had been stolen. These shares were eventually surrendered by the defendant, but the judge drew no inferences from this fact affecting the good faith of the defendant, and we are of opinion that his conclusion was warranted.

No question is here involved as to the rights of anyone except the plaintiff with respect to the defendant's receipt and disposition of the six bonds in question.

*Decree affirmed with costs.*