SAMUEL H. GEFFEN, administrator, *vs.* JULIUS PALETZ & others.

MORRIS BROCK *vs.* BERNARD L. GALE & others.

Suffolk.   May 6, 1942. — July 9, 1942.

Present: FIELD, C.J., DONAHUE, QUA, DOLAN, & COX, JJ.

*Trust*, Constructive. *Bills and Notes*, Demand note, Interest. *Interest. Mortgage*, Of real estate: by straw, assignment. *Equity Pleading and Practice*, Decree.

Interest upon a note payable on demand was not chargeable against the maker until the bringing of a suit upon the note where no previous demand for payment of the whole note had been made.

The delivery, by a mortgagee of real estate to his creditor "as protection . . . until some other form of protection should be provided" but not technically as security for his debt, of an assignment of the mortgage and of an overdue note which it purported to secure, without delivery of the mortgage or of the note, passed to the assignee only such rights as the assignor had, and, where it appeared that the mortgage and the mortgage note had been given by a straw, without consideration and as a mere "paper transaction," to the mortgagee as an agent of the real owner and that the agent had made the assignment without authority of the real owner, the assignee held title to the mortgage and the note only as constructive trustee for such owner.

A final decree dismissing the bill in a suit in equity by a creditor to reach and apply an alleged interest of a defendant in certain real estate, where it appeared that the defendant never had more than an interest as a constructive trustee for the real owner, improperly included an order for a transfer of such interest to the owner.

Two BILLS IN EQUITY, the first filed in the Superior Court on November 22, 1939, and afterwards amended, and the second filed on September 30, 1940.

From decrees entered by order of *Giles*, J., Geffen, administrator, appealed.

*S. Leventall*, (*M. Rosenthal* with him,) for Geffen, administrator.

*H. B. Zonis*, for Ida F. Gale.

Cox, J. The plaintiff in the first suit, who is the administrator of the estate of Joseph Geffen, hereinafter re-

ferred to as the intestate, seeks to have expunged from the records of the registry of deeds a fraudulent discharge of a $40,000 mortgage that had been assigned to the intestate, and also to have determined the amount due from the defendant Bernard L. Gale, hereinafter referred to as Gale, upon a promissory note. The plaintiff in the second suit is a judgment creditor of Gale, and seeks to reach and apply Gale's alleged interest in the real estate, hereinafter referred to as the Pearl Street property, that was covered by the mortgage alleged to have been fraudulently discharged. Both suits were referred to a master, the plaintiff Geffen's exceptions to whose report in each case were overruled by interlocutory decrees confirming the report, and final decrees, hereinafter referred to, were entered. The plaintiff in the first suit appealed from the interlocutory and final decrees, and, as one of the defendants in the second suit, appealed from the final decree.

The master found in the first suit that Gale is indebted to the plaintiff in the principal sum of $14,450, with interest from the date of the filing of the bill of complaint, on a note payable to the intestate's wife and indorsed by her. The plaintiff contends that he is entitled to interest from the date of the note that evidenced the debt. This note was payable on demand. The master found that there was no demand for payment of the whole note until the bringing of suit. Interest was properly allowed from the date of the filing of the bill. *Dodge* v. *Perkins*, 9 Pick. 368, 386. *Hunt* v. *Nevers*, 15 Pick. 500, 505, 506. *Paul Revere Trust Co.* v. *Castle*, 231 Mass. 129, 132. *Ratner* v. *Hill*, 270 Mass. 249, 253–254. Williston on Contracts (Rev. ed.) § 1175. Am. Law Inst. Restatement: Contracts, § 337, comment b. See *First National Bank of Boston* v. *Mathey*, 308 Mass. 108, 116.

The bill in the first suit contains allegations that, at the time of the fraudulent discharge of the mortgage in question, the defendant Paletz executed a new mortgage for $25,000 to Mrs. Gale, a defendant and Gale's wife, which she assigned to one Rogers. It is further alleged that Rogers is holding this mortgage for the benefit of the Gales,

and there was a prayer that the amount due Rogers be determined, and, if the assignment to him is valid, that he be directed to assign the mortgage and note to the plaintiff upon payment of the sum found due. The bill was dismissed as to Rogers. The master found that he had been paid and had reassigned the mortgage to Mrs. Gale, that she still held the reassignment, and that it had not been recorded. There are no findings as to the rights of the plaintiff with respect to this mortgage, and he has not contended that he has any such rights.

The master found that the intestate's signature to the discharge of the $40,000 mortgage was a forgery, and the decree recites that the discharge is null and void, and that the mortgage and note are still outstanding. Accordingly, the plaintiff in the first suit has attained the objectives of his bill, in so far as its allegations appear to have been pursued.

After the report was filed, Mrs. Gale was allowed to amend her answer. It seems to have been assumed that this answer was a counterclaim. Rule 32 of the Superior Court (1932) provides, among other things, that the answer must set up any counterclaim, against any one or more of the parties, arising out of the transaction that is the subject matter of the suit, which might be the subject of an independent suit in equity. The allegations of the amended answer are to the effect that Mrs. Gale was and is the owner of the Pearl Street property upon which the $40,000 mortgage was given, title to which was taken in the name of Paletz, who, at her request, executed the mortgage in question to Gale; that Paletz received no consideration and Gale gave no consideration therefor; that the mortgage was assigned to one Levin as security for a loan; that Mrs. Gale gave Gale the necessary money to pay Levin with instructions to pay off "the second mortgage and the note it secured"; and that Gale did this, but that instead of taking a discharge of the mortgage, he took an assignment to himself and executed an assignment to the intestate, without Mrs. Gale's consent or knowledge. There are further recitals that the assignment to the intestate was not for

the purpose of passing anything of value to him and was not intended to secure to him the payment of any money that Gale may have owed him; that the purpose was to keep an existing mortgage alive for use as collateral; that the intestate accepted the assignment for these purposes; and that the plaintiff is not entitled to "recover or to any relief" under his bill. There are prayers that either the plaintiff be adjudged to hold the $40,000 mortgage and note in trust for her, or that they be ordered cancelled and declared null and void, and for other relief.

The master found that the Pearl Street property belonged to Mrs. Gale, title to which was taken in the name of Paletz as "straw"; that Paletz received no consideration for the $40,000 mortgage and that Gale gave none. There are further findings that this mortgage was made in that amount, "in order to show the property covered at all times by sufficient record mortgages to discourage future creditors." The mortgage was assigned to one Levin to "cover" money owed him, and the note was indorsed in blank by Gale and delivered to him. Eventually Mrs. Gale gave Gale the money to pay Levin and instructed him to "pay off the second mortgage." Gale paid Levin and received his note and the $40,000 note, together with an assignment of the mortgage. Gale then executed an assignment of the mortgage to the intestate without Mrs. Gale's knowledge or consent. After this assignment was recorded, he sent it to the intestate without further explanation, but did not send the mortgage or the mortgage note, and did not further indorse the note.

A few months before Gale sent the assignment he had told the intestate that Levin had mortgages on the Pearl Street property and other properties and was threatening to foreclose, and that he might have to pay off the mortgage on the Pearl Street property and assign it to the intestate to hold for him in case he wanted to raise some more money. The intestate made no promise to receive or hold it for Gale. Gale did not intend the mortgage to be security for the note that he had given Mrs. Geffen. "The Geffens did not regard it technically as security for that note and

did not at first take any steps to have it put in Mrs. Geffen's name, anticipating that Gale might need it back in order to raise money for some promising step in his efforts to revive his real estate business. They regarded the assignment as protection for them until some other form of protection should be provided."

The $40,000 mortgage, which was recorded, is dated May 13, 1926. It recites that it is to secure the payment of $40,000, payable $400 on account of principal every month, and the full amount in one year. The note for $40,000 is dated May, 1926, and is payable $400 on account of principal every month, and the full amount in one year from date. It recites that it is secured by a mortgage of real estate situated on Pearl Street, Cambridge, Massachusetts. The assignment of this mortgage by Gale to the intestate is dated March 10, 1931.

From the foregoing it appears that the intestate, to whom Gale owed money on his note payable to Mrs. Geffen, received an assignment of the $40,000 mortgage; that he did not receive the note that was secured by the mortgage; that there was no consideration for the mortgage and note; that the mortgage was not intended as any valid lien on the Pearl Street property in the sense that anything would have to be paid in order to have it discharged; and that when the intestate received the assignment, the note, which was long overdue, contained Gale's indorsement in blank and no other indorsement. The case is distinguishable from *Pearson* v. *Mulloney*, 289 Mass. 508, 515. There was no liability on the part of Paletz to Gale upon the note. *Hart* v. *Louis S. Levi Co.* 303 Mass. 477, 479, and cases cited. It was a paper transaction, designed to discourage future creditors and for possible use as collateral. The assignment of the mortgage, which purported to assign the note, was effective to transfer Gale's interest in the note to the intestate. *O'Gasapian* v. *Danielson*, 284 Mass. 27, 31, 32, and cases cited. *General Ice Cream Corp.* v. *Stern*, 291 Mass. 86, 89. The plaintiff does not contend that the transactions of Gale with Levin, which resulted in the reassignment of the mortgage and the return of the note to Gale, gave

him any greater rights than he had before. See G. L. (Ter. Ed.) c. 107, § 31, cl. 5, and § 81; *Sawyer* v. *Wiswell*, 9 Allen, 39, 43–44; 98 Am. L. R. 313.

When the fraudulent discharge of the mortgage in question is expunged from the records, if nothing more is done the plaintiff will hold an assignment of the mortgage which, when the intestate received it, secured a note long overdue and without consideration. The plaintiff contends that the finding that Mrs. Gale owns the Pearl Street property is wrong. But it is established that Paletz, the maker of the $40,000 note and mortgage, does not own the property, and there is no contention that there was any consideration for either the note or the mortgage.

The finding as to the ownership of the Pearl Street property was a material issue in the second suit, as will hereinafter appear, and is important in the first suit, inasmuch as Gale would hold the mortgage as trustee for Mrs. Gale if she were the owner. *Nelson* v. *Bailey*, 303 Mass. 522, 526, 527. The $40,000 note, on its face, purports to be a mortgage note. It recites that it is secured by a mortgage of real estate situated on Pearl Street, Cambridge, and recorded in the registry of deeds. The assignment of the mortgage and "the note and claim secured thereby" refers to the book and page where the mortgage is recorded. In determining the rights of the plaintiff, the note and mortgage are to be construed together. *Strong* v. *Jackson*, 123 Mass. 60, 64. The intestate must be held to have known that, by the assignment, whatever rights he had depended upon the note and mortgage, that is, what purported to be a debt of Paletz evidenced by a note to Gale that was secured by a mortgage. The debt was the principal thing and the mortgage an incident. *United States Trust Co.* v. *Commonwealth*, 245 Mass. 75, 78. *General Ice Cream Corp.* v. *Stern*, 291 Mass. 86, 89. It is true that a mortgage on real estate has the inherent characteristics of real estate, but it is a conveyance of real estate or of some interest therein, defeasible upon the payment of money or the performance of some other condition. *Merritt* v. *Harris*, 102 Mass. 326. *United States Trust Co.* v. *Commonwealth*, 245

Mass. 75, 78. An assignment of a mortgage on real estate vests in the assignee a full legal title of the mortgagee in the mortgaged premises, *Barnes* v. *Boardman*, 149 Mass. 106, 115; *Lamson & Co. (Inc.)* v. *Abrams*, 305 Mass. 238, 240, but that is a title as collateral security for the mortgage debt. If the debt itself was not in existence, the assignee could take, under any circumstances, at most a naked legal title to the mortgage. *Morris* v. *Bacon*, 123 Mass. 58, 59. See *Kaufman* v. *Federal National Bank of Boston*, 287 Mass. 97, 100–101.

If it be assumed that the intestate received the assignment of the mortgage in question as security for Gale's debt on his note, it is to be observed that this note was dated April 1, 1930, and that the assignment was not sent to the intestate until about March 27, 1931. It is apparent from the findings of the master that, at best for the plaintiff, the assignment was to secure the payment of a preëxisting debt. In the early case of *Clark* v. *Flint*, 22 Pick. 231, it was said, at page 243, that the rule of equity is that where there is a purchase of real or personal estate from the legal owner, to which a third party has an equitable title, and the purchase is made in the usual course of business, without notice of the equitable title, for a valuable consideration paid therefor, or if the purchaser incurs any new responsibilities upon the credit thereof, he is to be considered as a bona fide purchaser, against whom the owner in equity can have no relief. "But if no consideration is paid, and the property be assigned and received in payment of or as security for a preëxisting debt, the assignee must take it subject to all the equity to which the assignor was subject." See *Glidden* v. *Hunt*, 24 Pick. 221, 226, 227; *McAuliffe & Burke Co.* v. *Gallagher*, 258 Mass. 215, 218; *The Elmbank*, 72 Fed. 610, 617. Inasmuch as Mrs. Gale was the owner of the Pearl Street property, Gale held the $40,000 mortgage and note in trust for her, *Nelson* v. *Bailey*, 303 Mass. 522, 526, 527, and, in the circumstances, the intestate must be held to have taken the assignment subject to Mrs. Gale's equities.

The intestate never had possession of the $40,000 note,

and, consequently, is not a "Holder" or "Bearer" of it within the definitions contained in G. L. (Ter. Ed.) c. 107, § 18. Even if he were a holder, in order to be a holder in due course, he must have become a holder before the note was due, G. L. (Ter. Ed.) c. 107, § 75, and if he were a holder other than a holder in due course, the note is subject to the same defences as if it were nonnegotiable, subject to the provisions of G. L. (Ter. Ed.) c. 107, § 81, as to which no question has been raised. Want or failure of consideration is a good defence to a suit upon a nonnegotiable instrument. *Dyer* v. *Homer*, 22 Pick. 253, 256. *Shoe & Leather National Bank* v. *Wood*, 142 Mass. 563, 568. *Old Colony Trust Co.* v. *National Non-Theatrical Motion Picture Bureau, Inc.* 274 Mass. 377, 380. See *Willis* v. *Twambly*, 13 Mass. 204, 206. The facts found in the first suit distinguish it from *White* v. *Dodge*, 187 Mass. 449, *Callahan* v. *Mercantile Trust Co.* 188 Mass. 393, and *Gardner* v. *Beacon Trust Co.* 190 Mass. 27.

The first suit is governed in principle by the case of *General Ice Cream Corp.* v. *Stern*, 291 Mass. 86, 89–90. There was no debt, although the $40,000 note purported so to evidence. The transaction between Paletz and Gale was not intended to create any liability on the part of Paletz, and the intestate, by assignment, acquired no greater rights than Gale had. See *Shrieves* v. *Morris*, 151 Mass. 310, 312, *Hart* v. *Louis S. Levi Co.* 303 Mass. 477, 479.

The decree in the first suit recites that the plaintiff holds the $40,000 note and mortgage in trust for Mrs. Gale, and he is ordered to assign that mortgage and note to her by a form prescribed in the decree. The plaintiff contends that there is no trust. It is true that there is no finding that the intestate received the assignment of the mortgage with notice of any conditions that would constitute him a trustee. See *Tingley* v. *North Middlesex Savings Bank*, 266 Mass. 337, 340; *Berry* v. *Kyes*, 304 Mass. 56, 59. Inasmuch as the intestate was not the holder of the note, the provisions of G. L. (Ter. Ed.) c. 107, § 48, to the effect that an antecedent or preëxisting debt constitutes value, are not applicable. Compare *National Surety Corp.* v. *List*, 308 Mass. 539, 542.

The master found that Mrs. Gale instructed Gale to "pay off the second mortgage" at the time she gave him the money to pay Levin, but nothing further was said as to his dealing with this second mortgage. Mrs. Gale did not learn that Gale, after paying Levin, had assigned the mortgage to the intestate, until May, 1934. At that time she saw the discharge purporting to bear the intestate's signature, not knowing that it was forged, and insisted that the "next" mortgage should run to her. Accordingly, Paletz executed the $25,000 mortgage and note to Mrs. Gale, who assigned it to Rogers as collateral for a note that she had given him. The master found that "None of the Geffens at any time before October 2, 1939, had knowledge that the Pearl Street property belonged to Mrs. Gale." It is true that Gale was his wife's agent and that she enabled him to assign the mortgage to the intestate who had no knowledge of the agency. But, for reasons already stated, the plaintiff stands no better than Gale, whether we regard the assignment of the mortgage only, or the note that was secured by the mortgage. We are of opinion that there was no error in providing in the decree that the mortgage and note are held by the plaintiff in trust for Mrs. Gale, and that he assign them to her.

In the second suit the finding of the master that Mrs. Gale was the owner of the Pearl Street property is conclusive against the plaintiff Brock's right to reach and apply Gale's alleged interest in that property. The plaintiff in the first suit was made a party to the second suit because of the assignment of the $40,000 mortgage to the intestate. Any issue thereby raised has been rendered immaterial by the finding of the master as to the ownership of the Pearl Street property. The final decree in the second suit established Mrs. Gale's ownership of the Pearl Street property and declared that the fraudulent discharge of the mortgage is null and void, and that the mortgage and note are still outstanding. The decree also contained the same provision as to the existence of the trust and the same order for the assignment of this mortgage by the plaintiff in the first suit to Mrs. Gale that is contained in the decree in that suit.

There is nothing in the pleadings in this second suit to warrant this.

Geffen, as plaintiff in the first suit and defendant in the second, filed sixty-four objections to the master's report.

Some of the exceptions have been argued. The exceptions that are based upon the objection that the findings contained in them are not warranted by the summaries of evidence contained in the report were properly overruled. The evidence warranted these findings.

The plaintiff in the first suit was not harmed by the exclusion of questions relative to the attorney who took the acknowledgment of the fraudulent discharge. Apart from the fact that there was no offer of the expected answers as to some of the questions, the plaintiff was not harmed. The master found that the discharge was a forgery. Nor was the plaintiff harmed by the refusal to permit questions as to what note was referred to in one of the exhibits or what was contained in the bankruptcy schedules of Gale's brother. The amount of Gale's debt was established to the apparent satisfaction of the plaintiff, except as to the matter of interest. There was no harm in permitting Mrs. Gale to testify as to her husband's real estate transactions. The only exception to one of the questions was that it was immaterial. See *E. Kronman, Inc.* v. *Bunn Bros. Inc.* 265 Mass. 549, 553; *Morin* v. *Clark*, 296 Mass. 479, 485.

The remaining exceptions relate to testimony of Mrs. Gale relative to her having talked with officials of the bank that had the first mortgage on the Pearl Street property; that she paid the attorney who had arranged a reduction of the first mortgage on this property; and to the admission of her married woman's certificate showing that she proposed to do business in one of the vacant stores in the Pearl Street property, and to the mortgage and note that she took when she sold this store. The record in these suits comprises one hundred and sixty-eight pages. Many matters seem to have been inquired into for the purpose of determining the true relationship of all parties, especially in the first suit, and it is apparent that the situation of the parties was material, as well as were the dates when certain

events took place. *General Ice Cream Corp.* v. *Stern*, 291 Mass. 86, 90. In the absence of a full report of the evidence showing the nature and extent of the examination and cross-examination, and the matters inquired into, it cannot be said that there was any reversible error in the admission of this evidence. Moreover, the exception to each of these questions is that the master failed to state the purpose for which this evidence was admitted, although duly requested. If counsel desired to have this evidence, or any of it, struck out as immaterial or to have it limited to a specific purpose, he should have so requested. The master was not required to state the purpose.

The plaintiff in the first suit has asked us to examine all of his objections and the summaries of evidence pertaining to them. We have examined all that have been specifically argued, and this is as much as we are required to do. *Commonwealth* v. *Dyer*, 243 Mass. 472, 508. *DeSantis* v. *Massachusetts Bonding & Ins. Co.* 289 Mass. 315, 322.

It follows from what has been said that the final decree in the second suit must be modified. The interlocutory and final decrees in the first suit are affirmed, and the final decree in the second suit, modified in accordance with this opinion, is affirmed.

*Ordered accordingly.*